IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIEN HONG VO, et al.          )
                              )
                Plaintiffs,   )     2:06-cv-00072-GEB-EFB
                              )
        v.                    )     ORDER*
                              )
JAN SCULLY, et al.,           )
                              )
                Defendants.   )
_____)

Defendants move for summary judgment on each claim in this action.  Plaintiffs oppose the motion except for the portion against their fifth claim for employment discrimination alleged under California Government Code § 12940.  Plaintiffs request this claim be dismissed.  The request is granted; this claim is dismissed.

BACKGROUND

Plaintiffs Thong Vo, Ngau Thi Nguyen, and Tien Hong Vo's (the "Property Plaintiffs") claims concern inspections of a real property located at 6045 Pomegranate Avenue, Sacramento, California (the "Pomegranate Property") and a subsequent state criminal

---

*     This matter was determined to be suitable for decision without oral argument.  L.R. 78-230(h).

prosecution against them for violations of various zoning, building, and health and safety laws concerning the Pomegranate Property. The Pomegranate Property was owned by Tien, who leased the Property to her parents Thong and Nguyen. Three buildings are located on the property, in which Thong and Nguyen operated group homes for eighteen mentally impaired persons. On October 22, 2004, Nguyen made an emergency telephone call for assistance because a resident on the property was not taking prescribed medication and Nguyen feared for this resident's health. Captain Christopher Quinn of the Sacramento Metropolitan Fire District responded to that call. While on the property, Captain Quinn declares he observed hazardous conditions, including an open trench that was six feet in depth. He notified various other government agencies that hazardous conditions existed on the Pomegranate Property. In response to that notification, Defendant Deputy District Attorney Natalia Luna, Sacramento County Building Inspector Robin Rasmussen and Plaintiff Karen Alexandrou of the Sacramento County Code Enforcement Division, conducted an inspection of the Pomegranate Property on October 25, 2004.

After that inspection, the Nuisance Response Team ("NRT"), which is comprised of individuals from various government agencies, including Defendants Deputy District Attorneys Luna and Karen Maxwell, and Captain James Cooper of the Sacramento County Sheriff's Department, and Plaintiffs Alexandrou and Richard Maddox of the Code Enforcement Division, held an emergency meeting on October 27, 2004 to discuss the Pomegranate matter. Immediately following the meeting, members of the NRT conducted another inspection of the Pomegranate Property.

1    In late 2004, Luna filed criminal charges against the
2  Property Plaintiffs based on conditions found on the Pomegranate
3  Property.  The Property Plaintiffs allege the inspections and the
4  criminal prosecution led to a distress sale of the Pomegranate
5  Property in approximately March 2005.

6    Further, Plaintiff Sonia Luong claims Defendants' actions
7  triggered her obligation to indemnify Tien (who had purchased the
8  Pomegranate Property from Luong before Defendants' inspections of the
9  property) for "an apparent breach of the warranty of quiet enjoyment"
10  which she owed Tien.  (First Am. Compl. Prayer for Relief ¶ 5.)  Luong
11  alleges she had to satisfy this obligation when Tien was forced to
12  sell the property "in an attempt to avoid future prosecution."  (Id.)
13  Luong also declares she was forced to settle this warranty dispute
14  with Tien by forgiving a portion of the debt Tien owed her for the
15  purchase of the Pomegranate Property.

16    The Property Plaintiffs allege the inspections and criminal
17  prosecution constituted proscribed housing discrimination under the
18  Fair Housing Act ("FHA") and the California Fair Housing and
19  Employment Act ("FEHA"), and also violated other California law and
20  the Property Plaintiffs' federal constitutional rights.

21    Plaintiffs Richard Maddox and Karen Alexandrou were employed
22  in the County's Code Enforcement Division at the time of the
23  inspections, but were reassigned after the October 27 Pomegranate
24  Property inspection.  They allege their reassignments were made in
25  retaliation for certain statements they made in defense of the
26  Property Plaintiffs concerning the inspections of the Pomegranate
27  Property and the criminal prosecution of the Property Plaintiffs.
28  //

1          DISCUSSION[1]

2          Defendants seek summary judgment on Maddox and Alexandrou's

3  claims, arguing these Plaintiffs lack standing to bring their claims

4  since any injury suffered from their reassignments is not "fairly

5  . . . trace[able]" to any Defendant's action, but rather is "th[e]

6  result [of] the independent action of some third party not before the

7  court." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1991)

8  (internal quotations citation omitted).  Each Defendant submits a

9  declaration denying participation in the decision to reassign Maddox

10  and Alexandrou.  Further, Maddox's supervisors Cheryl Creson and

11  Robert Sherry declare they decided to reassign him.  Moreover,

12  Alexandrou's supervisor Larry Brooks declares he decided to reassign

13  her.  Plaintiffs counter Maddox and Alexandrou were reassigned at the

14  behest of the Defendants.

15          Standing is not satisfied "if the injury complained of is

16  the result of the independent action of some third party not before

17  the court, [but this principle] does not exclude injury produced by

18  determinative or coercive effect upon the action of someone else."

19  Bennett v. Spear, 520 U.S. 154, 169 (1997).

20          In Maddox's case, Creson and Sherry declare that one month

21  before the inspections of the Pomegranate Property, they each received

22  an email from Defendant Chief Deputy District Attorney Cindy Besemer,

23  informing them that Maddox had been improperly communicating with the

24  criminal defense attorneys in an unrelated criminal prosecution

25  handled by the District Attorney's Office.  Further, they declare they

26  knew that tension existed between Maddox and the District Attorney's

27

28        [1]    The summary judgment standard is well-known and need not be
repeated unless applicable to a point discussed in the decision.

4

Office prior to the Pomegranate matter.  Soon after the email from
Besemer, psychologist Patricia Wiklund was hired by the Human
Resources Manager for the Sacramento County Municipal Services Agency
to assess the ongoing tension between the Code Enforcement Division
and the District Attorney's Office.  Wiklund reported her findings to
Creson, in which Wiklund stated Maddox's behavior undermined the
effectiveness of the Code Enforcement Division.

          In addition, Sherry and Creson declare that around September
2, 2005, they received a complaint from the District Attorney's Office
that a memorandum written by Maddox regarding the inspection of the
Pomegranate Property had been produced to the Property Plaintiffs
pursuant to a subpoena in the criminal case although this memorandum
had not been previously delivered to the District Attorney's Office.
Sherry and Creson declare they reviewed the memorandum, following
which they met with Maddox to discuss the production of the
memorandum.  Subsequently, Sherry, with Creson's concurrence,
reassigned Maddox to the Department of Economic Development.

          The evidence Defendants present indicates that Creson and
Sherry reviewed the circumstances concerning Maddox's relationship
with the District Attorney's Office and then made the decision to
reassign Maddox.  Maddox does not controvert this showing with
evidence creating a genuine issue of material fact on whether any
Defendant's action had a "determinative or coercive effect" on Sherry
and Creson's decision to reassign him.  Since Maddox has not shown his
reassignment is "fairly traceable" to any Defendant's action, this
portion of Defendants' motion is granted.

          In Alexandrou's case, Brooks declares he was aware that
tension existed between the District Attorney's Office and the Code

Enforcement Division which affected the efficient operation of the Code Enforcement Division.  He also declares there was a disagreement with the District Attorney's Office regarding whether a report prepared by Alexandrou on the inspections of the Pomegranate Property was accurate.  Brooks declares based on these reasons, he decided to reassign Alexandrou.

Alexandrou counters, declaring her reassignment "responded directly to any concerns raised by Defendants [Deputy District Attorneys] Karen Maxwell and Natalia Luna as if they were [her] own supervisors." (Alexandrou Decl. ¶ 16.)  However, Alexandrou's averment about Maxwell and Luna is a bare assertion which does not contain facts creating a genuine issue of material fact on whether the reassignment decision is "fairly traceable" to any Defendant.  Since Alexandrou fails to controvert Brooks' averments that he made the decision to reassign her or to show a genuine issue of material fact as to whether her reassignment is fairly traceable to any Defendant's action, this portion of Defendants' motion is also granted.

Defendants also seek summary judgment on Plaintiffs' California Unruh Civil Rights Act claims, California Civil Code § 53 claims, and twelve state tort claims, asserting these claims are barred because Plaintiffs failed to file government claims required by California Government Code § 945.4.  This section provides "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ."  Further, California Government Code § 950.2 states "a cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his

employment as a public employee is barred if an action against the employing public entity for such injury is barred under [§ 945.4]." See <u>Fowler v. Howell</u>, 42 Cal. App. 4th 1746, 1753 (1996) (barring the plaintiff's claim against a public employee under Cal. Gov't Code § 950.2 because he did not file a claim with the employing public entity).  However, "where a claimant seeks both damages and nonmonetary relief from a public entity in the same action, the applicability of the claim filing requirement turns on whether the damages sought are ancillary to the equitable relief also sought, in which case the claim filing requirement is inapplicable, or the reverse is true, in which case the filing requirement applies." <u>Gatto v. County of Sonoma</u>, 98 Cal. App. 4th 744, 761 (2002) (citation omitted).

Defendants argue § 945.4 applies since Plaintiffs primarily seek compensatory and punitive damages in this action.  Plaintiffs failed to respond to this argument.  Since Plaintiffs have admitted through responses to Defendants' document requests that they have not filed a claim pursuant to California administrative claim filing procedures, Plaintiffs' California Unruh Civil Rights Act and California Civil Code § 53 claims, and twelve state tort claims, are barred.  Therefore, this portion of Defendants' motion is granted.

Defendants also argue the County prosecutors are absolutely immune from liability for Plaintiffs' claims because their actions in prosecuting the Property Plaintiffs and inspecting the Pomegranate Property are "intimately associated with the judicial phase of the criminal process," citing <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976).  Further, Defendants argue Defendant District Attorney's Investigator William Motmans is also absolutely immune from liability

for Plaintiffs' claims, because this immunity depends on "the nature of the function performed, not the identity of the actor who performed it," citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).  Defendants argue Motmans is entitled to this immunity since his involvement with the October 25 inspection was for the purpose of assisting prosecutors prepare for the prosecution of the Property Plaintiffs.

Plaintiffs counter this immunity does not apply to acts that are investigatory in nature, citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  In Buckley, the Supreme Court held "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."  The issue of whether the investigative acts at issue are "carried out in preparation for a prosecutor's case [such that the movants] enjoy absolute immunity" need not be decided because of the decision infra on Plaintiffs' challenge to the inspections.  KRL v. Moore, 384 F.3d 1105, 1113 (9th Cir. 2004) (citation omitted).  It is clear that the absolute immunity doctrine bars Plaintiffs' claims against the prosecutors for the criminal prosecution of the Property Plaintiffs.

Defendants also seek summary judgment on Plaintiffs' Fourth Amendment unlawful inspection claims, arguing Thong and Nguyen granted permission for Defendants to conduct the October 25 and 27 inspections.

Defendants present deposition testimony from Building Inspector Robin Rasmussen who testified that prior to conducting the October 25 inspection, he requested and received Nguyen's consent to

1  enter and inspect the Pomegranate Property.  Plaintiffs do not

2  controvert this evidence.

3          Defendants also present evidence on the October 27

4  inspection.  Defendant Captain James Cooper of the Sheriff's

5  Department declares prior to conducting the October 27 inspection, he

6  requested and received Thong's consent to enter and inspect the

7  Property.  Cooper further declares he instructed Sheriff Lieutenant

8  Trang To to participate in this inspection, since To is fluent in

9  Vietnamese and could assist in translating and communicating with

10 Thong and Nguyen, who are Vietnamese.  To declares he explained to

11 Nguyen he was present to translate and to assist her with

12 understanding what was going on.  He declares he explained why members

13 of the Sheriff's Department and other government agencies were present

14 and that they wanted to inspect the property "to make sure it was safe

15 for the tenants and complied with health, safety, fire, zoning and

16 building requirements."  (To Decl. ¶ 6.)  He also declares he then

17 requested and received Nguyen's consent to enter and inspect the

18 Property.

19         Plaintiffs counter that Thong and Nguyen declare they

20 "expressed objections" to the inspection.  Defendants object to these

21 averments, arguing they are vague as to what Thong and Nguyen actually

22 said, and when and to whom they "expressed objections."

23              In ruling upon a Rule 56 motion, "a District Court
               must resolve any factual issues of controversy in
24              favor of the non-moving party" only in the sense
               that, where the facts specifically averred by that
25              party contradict facts specifically averred by the
               movant, the motion must be denied.  That is a
26              world apart from "assuming" that general averments
               embrace the "specific facts" needed to sustain the
27              complaint. . . .  The object of [Rule 56] is not
               to replace conclusory allegations of the complaint
28              or answer with conclusory allegations of an
               affidavit.  Rather, the purpose of Rule 56 is to

> enable a party who believes there is no genuine
> dispute as to a specific fact essential to the
> other side's case to demand at least one sworn
> averment of that fact before the lengthy process
> of litigation continues. . . .  It will not do to
> "presume" the missing facts . . . .

<u>Lujan v. Nat'l Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990).
Therefore, Thong and Nguyen's vague averments are insufficient to
controvert Cooper and To's specific averments that they obtained
consent from Thong and Nguyen to inspect the Property.

Plaintiffs also rely on the averment of Alexandrou where she
declares she never saw Cooper and To speaking with Thong and Nguyen on
October 27.  However, this averment is insufficient to controvert
Defendants' evidence since it does not establish Alexandrou has
personal knowledge of whether Cooper and To spoke with Thong and
Nguyen.

Plaintiffs also argue any consent given on October 27 was
coerced since there were about twenty people on the property at the
time Defendants assert consent was given.  Plaintiffs, however, have
not set forth specific facts from which a reasonable inference could
be drawn creating genuine issues of fact on the voluntariness of Thong
and Nguyen's consent.

Plaintiffs also argue Defendants should have sought consent
from the Pomegranate Property residents because Thong and Nguyen
lacked authority to consent since they did not reside on the premises,
and contend the residents lacked the necessary mental competency to
consent.  Defendants rejoin the law does not authorize Plaintiffs to
assert the rights of those residents.  This issue need not be reached
since Plaintiffs have not controverted Defendants' evidence that Thong
and Nguyen had authority to consent to the inspections as "persons

generally having joint access or control for most purposes." <u>United States v. Matlock</u>, 415 U.S. 164, 171 n.7 (1974). Accordingly, this portion of Defendants' motion is granted.

Defendants also seek summary judgment on Plaintiffs' Equal Protection claim, arguing Plaintiffs were not treated differently from others similarly situated. To succeed on this claim, Plaintiffs must show they were treated differently from others similarly situated. <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1225 (9th Cir. 2008). Plaintiffs counter Defendants specifically targeted group homes used by mentally disabled and other disadvantaged persons, relying on Maddox's declaration and the testimony of Paul Lake, the chairperson of the Nuisance Response Team ("NRT"). Plaintiffs present Maddox's averment in which he declares he had "an opinion that the [District Attorney's Office] used . . . unlawful selective enforcement practices." (Maddox Decl. ¶ 20.) He further declares he was concerned that the District Attorney's Office's "criminal law enforcement practices were not appropriate for administrative law enforcement cases, particularly where criminal law enforcement officers were taking advantage of the lower burden placed on administrative officers by the Fourth Amendment in order to conduct criminal investigations." (Maddox Decl. ¶ 19.) However, Maddox's averments are vague as to what the District Attorney's Office actually did that was "unlawful" and "not appropriate," and therefore are insufficient to create a triable issue on whether the District Attorney's Office targeted group homes used by mentally disabled and other disadvantaged persons.

Plaintiffs also rely on Lake's deposition testimony in which he testified that the NRT had dealt with group home issues numerous

times because these homes created a nuisance.  However, this testimony is also insufficient to show the group homes at issue were treated differently from other similarly situated homes.  Accordingly, this portion of Defendants' motion is granted.

Defendants also seek summary judgment on Plaintiffs' housing discrimination claims alleged under the FHA and the FEHA.  Defendants, argue they did not have discriminatory intent at any time, which is a necessary element of these claims.  The McDonnell Douglas v. Green, 411 U.S.792, 802 (1973), burden-shifting analysis applies to this portion of the motion.  Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999) (discussing the burden shifting analysis applicable to determining whether a defendant had discriminatory intent); Brown v. Smith, 55 Cal. App. 4th 767, 780 (1997)(stating "FEHA in the housing area is . . . intended to conform to the general requirements of federal law in the area . . . .").

Defendants submit the declaration of Fire District Captain Quinn for the purpose of explaining what conditions existed on the Pomegranate Property on October 22, 2004.  Captain Quinn declares he observed "a large trench in the yard of the residence, approximately 125 feet long and three feet wide with a depth of up to six feet in some areas. . . . [He] observed that many of the residents appeared to suffer from mental health issues and [he] deemed this open trench a hazard . . . . While on the scene [he] saw a hole of approximately six feet depth in the rear yard hidden by weeds which was full of water." (Quinn Decl. ¶¶ 3, 5.)  He declares "[t]he bottom of the trench had mud and water in it and the sides of the trench showed evidence of collapse." (Quinn Decl. ¶ 10.)  He also declares he saw one of the residents enter the trench to recover a small dog which had fallen

12

into the trench.  (Quinn Decl. ¶ 10.)  He declares he "felt the resident had no understanding of the potential hazards the trench presented because of her mental health condition."  (Quinn Decl. ¶ 11.)  He further declares he found non-working smoke detectors, and observed "bars on windows which lacked panic hardware and saw other evidence of fecal matter on walls and floors."  He also noted "[n]umerous cats . . . occupying all areas of the residence and a great deal of flies . . . in at least two rooms of the residence." (Quinn Decl. ¶ 12.)  He declares he notified various agencies about his observations.  (Quinn Decl. ¶¶ 4, 9.)  He declares he observed Lana Harrington of the California Department of Social Services arrive at the property and remove at least three residents from the property. (Quinn Decl. ¶ 9.)

Defendant District Attorney Investigator William Motmans declares he received a telephone call from Lana Harrington during which he was informed there were hazardous conditions on the Pomegranate Property; Motmans relayed this information to Defendant Luna on October 22.  (Motmans Decl. ¶ 11.)  Luna declares based on the information supplied by Motmans, she decided to conduct an inspection of the Pomegranate Property on October 25, 2004.  (Luna Decl. ¶¶ 12, 13.)  Luna, Building Inspector Robin Rasmussen, and Alexandrou conducted the October 25 inspection.

Thong Vo declares the trench was dug in October 2004 to connect the property to the sewer system, pursuant to a building permit.  He further declares the trench was inspected and approved by a building inspector on October 22, 2004.  He also declares the trench was shallow on the end near the building and increased in depth until it was about six feet deep on the end near the street.  However, Vo's

averments are insufficient to controvert Captain Quinn's averments that the open trench constituted a hazardous condition for the mentally impaired residents.  Vo further declares the trench was filled during the weekend of October 23-24, 2004.  However, this is also insufficient to controvert Luna's declaration that she conducted the October 25 inspection based on information she received on October 22 that hazardous conditions existed on the Pomegranate Property.

Alexandrou declares she tested many smoke detectors during the October 25 inspection and all the smoke detectors she tested were working.  However, Alexandrou's averment is insufficient to controvert Captain Quinn's declaration that non-working smoke detectors existed on the property since Alexandrou did not test all the smoke detectors.

In light of the uncontroverted evidence that Luna conducted the October 25 inspection in response to information she received on October 22 about conditions on the Pomegranate Property, including an open trench, non-working smoke detectors, and other health and safety issues, Plaintiffs have not raised a genuine material factual issue regarding the authenticity of the Defendants' stated non-discriminatory motive for conducting the October 25 inspection.

Plaintiffs also dispute whether a non-discriminatory basis existed for the October 27 inspection.  The question is whether a genuine issue of material fact exists concerning Defendants' motive for that inspection.  Defendants provide Rasmussen's deposition testimony in which he testified during his inspection on October 25 he saw windows lacking proper egress and guardrail posts for a stairway that were too far apart, which constitutes violations of the building code.  Rasmussen also testified that the windows lacking proper egress created imminently dangerous conditions on the property.  Based on

these violations, he issued three notices of violation, one for each of the buildings on the property.

Plaintiffs counter, pointing to Alexandrou's declaration where she declares she observed bars on two windows but "one window led to an entry area with plenty of egress in case of emergency, and the other [window] led to a storage closet . . . ." (Alexandrou Decl. ¶ 4.)  However, Alexandrou's averment is insufficient to show that other windows at the Pomegranate Property had proper egress.

Luna and Cooper declare they attended an emergency meeting of the NRT on October 27, 2004, concerning the Pomegranate Property. They declare that based on statements made by various team members that hazardous conditions existed on the property, a decision was made to inspect the property immediately.

Plaintiffs argue discriminatory intent can be inferred from the NRT's non-compliance with the NRT procedures in conducting the October 27 inspection, relying on Maddox's declaration, in which he declares that before conducting an inspection, the NRT must designate a "Lead Person" or "Lead Agency" who, together with the chairperson of the NRT, decides how the investigation would be conducted.  However, this evidence is not probative of discriminatory intent.

In light of the conditions found on the property posing safety risks to the mentally impaired residents, Plaintiffs have not raised a genuine material factual issue regarding the authenticity of Defendants' stated non-discriminatory motive for conducting the October 27 inspection.  Accordingly, this portion of Defendants' motion is granted.

//

//

1          For the reasons stated, Defendants' motion is granted, and

2  judgment shall be entered in favor of Defendants.

3  Dated:  January 16, 2009

4

5  _____
   GARLAND E. BURRELL, JR.
6  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28